## FREDERICK v FEDERAL-MOGUL CORPORATION

Docket No. 266735. Submitted June 7, 2006, at Grand Rapids. Decided December 19, 2006, at 9:25 a.m.

Lance Frederick brought an action in the Montcalm Circuit Court against Federal-Mogul Corporation, seeking compensation for the defendant's use without compensation of his intellectual property in the form of a trade secret. The defendant, which had filed for bankruptcy before the alleged use of the trade secret and before the plaintiff brought this action, moved for summary disposition, asserting that the plaintiff's action was barred by the automatic-stay provision for bankruptcy or, alternatively, was preempted because the alleged agreement was an executory contract within the bankruptcy court's exclusive jurisdiction. The court, David A. Hoort, J., granted the motion on both grounds. The plaintiff appealed.

The Court of Appeals *held*:

The plaintiff alleged "claims" against the defendant as that term is defined in 11 USC 101(5), even though the claims were unliquidated, contingent, and unmatured. The automatic-stay provision, 11 USC 362(a)(1), prohibits all activity for collecting a debt that arose before the bankruptcy filing. Because the plaintiff's claims existed at the time of the defendant's bankruptcy filing, they are barred by the automatic-stay provision despite their unliquidated, contingent, and unmatured nature. The plaintiff asserted that his causes of action on the claims arose or accrued under Michigan law after the bankruptcy petition and thus are not barred by the automatic stay. Because they are claims subject to the automatic-stay under the bankruptcy-law definition, however, the trial court did not err by dismissing the plaintiff's action, regardless of when his claims arose under Michigan law.

Affirmed.

BANKRUPTCY — DEBTOR AND CREDITOR — AUTOMATIC STAY — CONTINGENT CLAIMS.

A claim that existed at the time of a bankruptcy filing is subject to the automatic stay in bankruptcy, even if the claim is unliquidated, contingent, and unmatured and regardless of whether a cause of

action on the claim arose or accrued under Michigan law after the bankruptcy petition was filed (11 USC 101[5], 362[a][1]).

*G. Robert Carpenter, P.C.* (by *G. Robert Carpenter*), for the plaintiff.

*Dykema Gossett PLLC* (by *John A. Ferroli*) for the defendant.

Before: O'CONNELL, P.J., and MURPHY and WILDER, JJ.

PER CURIAM. Plaintiff appeals as of right the trial court's grant of summary disposition to defendant. We affirm.

I

Plaintiff, a tool and die maker employed by defendant, asserted in his complaint that in November 2000 he "conceptualized and invented a new machine and process for the manufacturing of engine bearings,"[1] which he disclosed to defendant after defendant promised to keep the invention confidential and to fairly compensate plaintiff if defendant used it. In October 2001, defendant filed for bankruptcy. In March 2003, defendant, allegedly without plaintiff's consent, began using the new method at its plants (according to plaintiff's complaint), and, as a result, reaped economic benefit but refused to compensate plaintiff, as previously allegedly agreed. Plaintiff filed his complaint in August 2005, asserting claims for misappropriation of trade secrets, quantum meruit, equitable and promissory estoppel, and breach of contract.

Defendant moved for summary disposition, claiming that this action was barred by the automatic stay in

---

[1] Plaintiff claims that the alleged invention is his intellectual property in the form of a trade secret.

bankruptcy, 11 USC 362, or, alternatively, that this action was preempted because the parties' alleged agreement was an executory contract under 11 USC 365[2] and thus was within the exclusive jurisdiction of the bankruptcy court. The trial court granted defendant's motion. The trial court reasoned that the alleged agreement arose prebankruptcy, but the alleged breach arose postbankruptcy. The court noted that the "Bankruptcy Code defines a claim as the right to payment or equitable relief even if the same is contingent, unmatured, disputed or equitable. 11 USC 101(5)(A) and (B)." The trial court gave two holdings:

> Even if plaintiff's cause of action was not arguably actionable under state law pre-filing of the bankruptcy petition, under federal bankruptcy law it was a claim for purposes of the automatic stay provisions of section 362 or, at the very least, within the jurisdiction of the bankruptcy court to determine whether plaintiff possessed a pre-petition interest rising to the level of a contingent claim that would be discharged in bankruptcy.

> [T]he "intellectual" nature of the parties['] agreement constituted an executory contract or, again, a matter of bankruptcy law over which the state court is without authority to render [a] final opinion.

II

We review summary dispositions de novo. *Dressell v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). We also review conflicts of laws de novo. *Frydrych v Wentland*, 252 Mich App 360, 363; 652 NW2d 483 (2002). Statutory interpretation is a question of law,

---

[2] 11 USC 365(a) provides, in relevant part: "Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, *the trustee*, subject to the court's approval, *may assume or reject any executory contract or unexpired lease of the debtor*." (Emphasis added.)

reviewed de novo. *Preserve the Dunes, Inc v Dep't of Environmental Quality*, 471 Mich 508, 513; 684 NW2d 847 (2004). To the extent that the Supremacy Clause[3] or the doctrines of federal preemption are implicated here, we review such questions de novo. *X v Peterson*, 240 Mich App 287, 289; 611 NW2d 566 (2000).[4]

### III

Plaintiff first argues that Michigan substantive law controls the determination when a claim arises for purposes of determining whether it is barred by the automatic stay. We disagree, for the reasons explained below.

The automatic stay in bankruptcy occurs with the initial bankruptcy filing. 11 USC 362(a). The automatic stay prohibits all activity for collecting a debt that arose before the bankruptcy filing. 11 USC 362(a)(1). 11 USC 362(a)(1) provides that the filing of a petition for bankruptcy operates as a stay, applicable to all entities, of

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that *was or could have been commenced before* the commencement of the case under this title, or *to recover a claim against the*

---

[3] The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . , shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." US Const, art VI, cl 2.

[4] "The Supremacy Clause, US Const art VI, cl 2[,] provides that federal laws take precedence over state laws by express preemption, conflict preemption, or field preemption. . . . 'In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law . . . .' 'Congressional intent is the cornerstone of preemption analysis.' " *X, supra* at 289 (citations omitted).

*debtor that arose before* the commencement of the case under this title[.] [Emphasis added.]

Thus, if plaintiff's action "could have been commenced before the commencement of the case" in bankruptcy, or if plaintiff's "claim . . . arose before the commencement of the case" in bankruptcy, then plaintiff's action is barred by the automatic stay. 11 USC 362(a)(1).

The Bankruptcy Code defines a "claim" as a "right to payment, *whether or not such right is* reduced to judgment, liquidated, *unliquidated,* fixed, *contingent,* matured, *unmatured,* disputed, undisputed, legal, *equitable,* secured, or unsecured[.]" 11 USC 101(5)(A) (emphasis added). A "claim" is further defined as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, *whether or not such right to an equitable remedy is* reduced to judgment, fixed, *contingent,* matured, *unmatured,* disputed, undisputed, secured or unsecured." 11 USC 101(5)(B) (emphasis added).

". . . Congress intended by this language to adopt the broadest available definition of 'claim.' " *Johnson v Home State Bank,* 501 US 78, 83; 111 S Ct 2150; 115 L Ed 2d 66 (1991). Under the plain language of 11 USC 101(5), a claim may be unliquidated, contingent, or unmatured at the time a debtor filed for bankruptcy, and the stay is not triggered solely when a cause of action is deemed to "accrue" (a term used with statutes of limitations). See, e.g., *In re M Frenville Co, Inc,* 744 F2d 332, 336 (CA 3, 1984). Here, pursuant to 11 USC 101(5), plaintiff's "claims" existed at the time of the bankruptcy filing, although they were unliquidated, contingent,[5] and unmatured. Under 11 USC 101(5)(A),

---

[5] Our Supreme Court has defined a "contingent claim" as " 'one which does not exist but may possibly hereafter arise, one whose possible

even though plaintiff's claims were unliquidated, contingent, and unmatured, they are claims for purposes of the automatic stay.

*In re M Frenville* held that when there is a prepetition contract, as alleged here, it "is the classic case of a contingent right to payment under the Code—the right to payment exists as of the signing of the agreement, but is dependent on the occurrence of a future event." *In re M Frenville, supra* at 337.[6] In that circumstance, the claim, though contingent, is a "claim" under the federal definition, 11 USC 101(5), and is barred by the automatic stay.

*In re Bliemeister*, 251 BR 383, 395 (Bankr D Ariz, 2000), stated: "[U]nder bankruptcy law, a claim is often deemed to arise long before liability accrues under state law, because bankruptcy law recognizes contingent claims." Similarly, *In re Cool Fuel, Inc*, 210 F3d 999, 1006 (CA 9, 2000), stated:

> It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued. *See In re Jensen,* 995 F.2d 925, 929 (9th Cir.1993); *In re Remington Rand Corp.,* 836 F.2d 825, 831-32 (3d Cir.1988) (holding that government claim was allowable in bankruptcy proceeding even though claim had not accrued under the Contract Disputes Act of 1978); 11 U.S.C. § 101(5)(A) (defining "claim" as any "right to payment," even if it is "contingent" or "unmatured"); 11

existence depends upon an uncertain future event—upon a contingency.' " *Nat'l Bank of Detroit v Voigt Estate,* 357 Mich 647, 651; 99 NW2d 504 (1959) (citation omitted).

[6] In *In re M Frenville*, there was no prepetition contract. The case involved a situation in which the acts of the debtor that gave rise to the suit occurred before the filing of the bankruptcy petition, but the cause of action stemming from those acts did not arise until after the petition was filed. *In re M Fenville, supra* at 333. Although the court ultimately concluded that the automatic stay did not apply, *id.* at 337, the discussion concerning prepetition contracts is nonetheless relevant for this case.

U.S.C. § 502(b)(1) (stating that bankruptcy court "shall determine the amount of [a] claim ... and allow such claim[s] ... except to the extent that ... such claim is unenforceable against the debtor ... for a reason other than because such claim is contingent or unmatured"); *see generally* LAWRENCE P. KING, 1 COLLIER BANKRUPTCY MANUAL ¶ 101.05[1] at 101-9 & nn. 9,11 (3d ed.1999) (noting that an allowable claim includes "a cause of action or right to payment that has not yet accrued or become cognizable").

*In re Manville Forest Products Corp*, 209 F3d 125, 128 (CA 2, 2000), cited and quoted the following decision:

> ... *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1003 (2d Cir. 1991) (Congress gave the term claim a broad definition and "*contemplate[d] that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case*") (quoting H.R.Rep. No. 95-595, at 309 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6266) (internal quotation marks omitted). [Emphasis added.]

*In re Manville Forest Products Corp* further stated:

> Under the current code, even contingent and unliquidated debts can constitute claims. *See* 11 U.S.C. §§ 101(5)(A), 1141(d)(1). The Bankruptcy Code does not specifically define "contingent" claims. However, in the context of a contract claim, such as the case here, we have said that *contingent claims refer "to obligations that will become due upon the happening of a future event* that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." [*In re Manville Forest Products Corp, supra* at 128-129 (emphasis added).]

Therefore, consistently with these cases, we hold that plaintiff's claims, though contingent, were, for the purposes of bankruptcy, claims subject to the automatic stay and that, accordingly, the trial court did not err in

dismissing plaintiff's action, regardless of when the claims arose under Michigan law.[7]

Plaintiff next argues that under Michigan law, his causes of action arose postpetition and are therefore not barred by the automatic stay. Since we hold that plaintiff's claims, though contingent, are barred by the automatic stay because they fit the bankruptcy definition of "claim," we are compelled to reject this assertion that a stay is triggered only on accrual of the claim.

IV

We hold that under 11 USC 101(5), plaintiff's allegations constituted claims, albeit contingent ones, under federal bankruptcy law and were therefore barred by the automatic stay.

Affirmed.

---

[7] In his complaint, plaintiff also alleged a claim sounding in equitable estoppel (count III). However, equitable estoppel can only preclude an opposing party from asserting or denying the existence of a particular fact; it cannot form the basis of an independent cause of action. *Lakeside Oakland Dev, LC v H & J Beef Co,* 249 Mich App 517, 527; 644 NW2d 765 (2002). Therefore, defendant was entitled to summary disposition pursuant to MCR 2.116(C)(8) on count III.